**POULIN | WILLEY | ANASTOPOULO, LLC**
Eric M. Poulin (California State Bar No. 298476)
eric.poulin@poulinwilley.com
Paul J. Doolittle (*Pro Hac Vice Forthcoming*)
Paul.doolittle@poulinwilley.com
cmad@poulinwilley.com
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKIE MELENDEZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiff<br><br>v<br><br>KAWASAKI MOTORS CORP., USA.<br><br>    Defendant | **Case No:** 8:25-cv-910<br>1. **Unjust Enrichment**<br>2. **Fraudulent Concealment**<br>3. **Strict Liability-Failure to Warn**<br>4. **Strict Liability-Design Defect**<br>5. **Negligent Failure to Warn**<br>6. **Negligent Design Defect**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff, Rickie Melendez ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Complaint against Defendant, Kawasaki Motors Corp., USA ("Defendant") and alleges upon personal knowledge as to himself and his own acts

1

and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Plaintiff brings this class action lawsuit as individuals who purchased Defendant's 2025 KX450X Series Motorcycles (hereinafter "Products" or "Motorcycle(s)") for normal use.

2. On April 24, 2025, a recall was initiated for the 2025 KX 450X Series Motorcycles. This includes the following product numbers: 2025 KX 450, 2025 KX 450SR and 2025 KX450X. The basis for the recall was a crankshaft that can fail[1].

3. A crankshaft's purpose is to convert the vertical motion of the pistons into a rotational motion[2].

4. A crankshaft failure can cause the engine to stall, or in other words, "fail"[3]. This failure can cause a serious fall hazard exposing riders to the risk of sustaining serious, if not life threatening, injuries.

5. These Motorcycles can be bought directly through the Defendant's Website as well as through its authorized dealers across the United States.

6. As such, these Bicycles are distributed, marketed, and sold by Defendant to consumers across the United States.

7. The models subject to recall are part of the 2025 line of Kawasaki's KX450 Series. The specific models subject to recall are noted above. The specific model numbers associated with the recall

---

[1] https://www.cpsc.gov/Recalls/2025/Kawasaki-Motors-USA-Recalls-Model-Year-2025-Competition-and-Cross-Country-Motorcycles-Due-to-Crash-Hazard (last accessed May 1, 2025)
[2] https://www.howacarworks.com/crankshaft (last accessed May 1, 2025)
[3] https://mmgracingstore.com/en/blog/post/everything-you-need-to-know-about-the-motorcycle-crankshaft?srsltid=AfmBOooqkF_esfuSA0Buach0AYgd_vWDkiYcGNxzlf6cYyZrLJ-1VqQb (last accessed May 1, 2025)

are: KX450MSFNN; KX450PSFNN; and KX450NSFNN[4]. The Motorcycles are defective because the primary gear on the crankshaft can fail creating a crash hazard that could result in serious bodily injury[5]. Despite this known crash risk, Defendant represented that the Motorcycles were safe and effective for their intended use.

8. Other manufacturers formulate, produce, and sell non-defective cross-country motorcycles with formulations and production methods that do not cause the primary gear on the crankshaft to fail while in use. Designing and manufacturing a crankshaft that fails when consumers are riding the motorcycle evidences a known risk inherent with Defendant's Products and is demonstrably avoidable.

9. Feasible alternative formulations, designs, and materials are currently available and were available to Defendants at the time the Products were formulated, designed, and manufactured.

10. Plaintiff purchased the Product, while lacking the knowledge that the Product could fail while being ridden due to the engine stalling and exposing them to a real crash hazard that risks causing serious harm to those who use such Products.

11. All consumers who purchased the worthless and dangerous Products have suffered losses.

12. As a result of the above losses, Plaintiff seeks damages and equitable remedies on behalf of themselves and the putative class.

---

[4] https://www.cpsc.gov/Recalls/2025/Kawasaki-Motors-USA-Recalls-Model-Year-2025-Competition-and-Cross-Country-Motorcycles-Due-to-Crash-Hazard (last accessed May 1, 2025)
[5] https://www.cpsc.gov/Recalls/2025/Kawasaki-Motors-USA-Recalls-Model-Year-2025-Competition-and-Cross-Country-Motorcycles-Due-to-Crash-Hazard (last accessed May 1, 2025)



## PARTIES

13. Plaintiff Melendez is a resident and citizen of Henderson, Nevada. Henderson is located within Clark County.

14. Defendant Kawasaki Motors Corp., USA., is a US corporation organized and existing under the laws of the State of Delaware with its principal place of business in California located at 26972 Burbank Foothill, Ranch, California 92610. Its Registered Agent is CT Corporation and according to the California Secretary of State's On-line Business Entity Search portal, lists nearly a dozen authorized employees. The Agent's Service address is 330 North Brand Blvd., Suite 700, Glendale, California 91203.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d).

16. This Court has personal jurisdiction over Defendant because Defendant has

purposefully availed itself to this District's jurisdiction and authority, given that the Defendant has conducted substantial business in this judicial district and in the State of California.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, given that the production and distribution of the defective product occurred within this District.

## FACTUAL ALLEGATIONS

18. The CPSC has recalled the Kawasaki's line of its 2025 KX Series cross country motorcycles for having designed and manufactured an engine whose primary crankshaft gear is susceptible to failure that can cause the engine to stall and create a crash risk that exposes riders to serious, and potentially, life threatening injuries.

19. The Consumer Product Safety Commission issued a recall for the defective Products on April 24, 2025[6].

20. Plaintiff Melendez purchased the Kawasaki Motorcycle from the Defendant for ordinary use.

21. At the time of purchase, Plaintiff was unaware that the bike was equipped with a defective crankshaft that could fail and expose him to a crash hazard.

### *Defendants' Misrepresentations and Omissions are Actionable*

22. Plaintiff bargained for a Product that was safe to use. Defendants' crash prone Products were, and are, unsafe. As a result of the risk of crashing, Plaintiff, and all others similarly situated, were deprived the basis of their bargain given that the Defendant sold them a product whose engines could stall while being ridden causing a potentially life-threatening crash

---

[6] https://www.cpsc.gov/Recalls/2025/Kawasaki-Motors-USA-Recalls-Model-Year-2025-Competition-and-Cross-Country-Motorcycles-Due-to-Crash-Hazard

5

hazard. This dangerous crash risk inherent to the Products renders them unmerchantable and unfit for their normal intended use.

23. The Products are not fit for their intended use because they expose consumers to a crash hazard. Plaintiff is further entitled to damages for the injury sustained in being exposed to such danger, damages related to the Defendants' conduct, and injunctive relief.

24. Plaintiff seeks to recover damages because the Products are adulterated, defective, worthless, and unfit for human use due to the risk of crashing after motorcycle's engine fails because of a defective gear in the crankshaft.

25. The Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of injury affecting the Products despite riders using the Product as intended.

26. Indeed, no reasonable consumer, including Plaintiff, would have purchased the Products had they known of the material omissions of material facts regarding the possibility of the Products engine stalling and failing while they were riding the motorcycle.

27. Plaintiff bought the Kawasaki Motorcycle for personal use.

28. Plaintiff intended to purchase a Product that would be safe for normal use but instead was sold a dangerous crash hazard that could result in the rider suffering serious and/or life-threatening injuries.

29. If Plaintiff had been aware of the crash risk in the Motorcycle, he would not have purchased the Product or would have paid significantly less.

30. As a result of the Defendant's actions, Plaintiff has incurred damages.

**CLASS ACTION ALLEGATIONS**

31. Plaintiff brings this action on behalf of himself and as a class action for all others

similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

**All persons within the United States who purchased a 2025 Kawasaki KX Series Motorcycle- specifically models: KX450, KX 450SR and KX during the period within the statute of limitations**.

32. This Nationwide Class shall be referred to herein as the "Class."

33. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

34. Excluded from the Class and Sub-classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

35. The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from major retail sellers.

36. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

37. The proposed Class is so numerous that the joinder of all members is impracticable.

38. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

39. **Numerosity: Fed. R. Civ. P. 23(a)(1)** – Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown currently, such information is in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process. The CPSC suggests that 3400 motorcycles are potentially subjected to recall.[7] Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

40. **Typicality: Fed R. Civ. P. 23(a)(3)** – Plaintiff's claims are typical of the claims of the members of the Class, because, inter alia, all Class Members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiffs' claims are typical of the Class Members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-class.

41. **Adequacy: Fed. R. Civ. P. 23(a)(4)** – Plaintiff will fairly and adequately protect the interest of the members of the Class. Plaintiff and the members of the Class were all consumers of a defective product posing a crash hazard. Plaintiff will fairly and adequately represent and protect the interest of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no antagonistic interest to those of the Class, and Defendant has no defenses unique to Plaintiffs.

---

[7] https://www.cpsc.gov/Recalls/2025/Kawasaki-Motors-USA-Recalls-Model-Year-2025-Competition-and-Cross-Country-Motorcycles-Due-to-Crash-Hazard (last accessed May 1, 2025)

42. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

43. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described. Unless a Class is certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiffs and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

44. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** – This action involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

   a. Whether the primary gear in the crankshaft is susceptible to failure;
   b. Whether a failure in the engine's crankshaft can cause the engine to stall while in use;
   c. Whether an engine stall on a motorcycle in use posses a crash hazard;
   d. Whether the Defendant negligently designed, manufactured and/or installed a defective crankshaft into the recalled motorcycles;
   e. Whether Defendant's wrongful retention of Plaintiff and Class Members' payments was either an act of conversion or an act of unjust enrichment, or both;
   f. Whether Defendant breached its contract with the Plaintiff by failing to refund Plaintiffs' payments upon the announcement of the recall;
   g. Whether Defendant's retention of Plaintiff and Class Members' payments was a violation of Defendant's duty of good faith and fair dealing;
   h. Whether Defendant was unjustly enriched as a result of retaining and refusing to refund Plaintiff and Class Members' payments upon the recall announcement;
   i. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and
   j. Whether Plaintiff and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

## CAUSES OF ACTION

### COUNT I

### UNJUST ENRICHMENT

45. Plaintiff incorporates the allegations set forth in the previous aforementioned

Paragraphs as though set forth fully herein.

46. Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

47. Plaintiff, and the other members of the Class, conferred a monetary benefit upon Defendant by purchasing the defective Motorcycles either directly or through its authorized dealers. These payments were not gifts or donations but were made in exchange for products that were falsely represented as safe and reliable.

48. Defendant voluntarily accepted and retained these benefits. Defendant manufactured, marketed and distributed the defective Motorcycles without adequate warnings of the known defect.

49. The benefit was obtained unlawfully by Defendant distributing a Product prone to having its engine stall during its normal and intended use causing a crash hazard. Retaining these profits without disclosing the defect or refunding consumers is unjust and inequitable.

50. The Defendant received revenues from the sales of these defective Motorcycles at the expense of Plaintiff and the Class, who would not have purchased the Motorcycles had they been aware of the defect. The labeling and marketing of the Products by Defendants were misleading and caused direct economic harm and risk of injury to Plaintiff and the Class.

51. Defendant has been unjustly enriched by retaining the revenues derived from the sales of Motorcycles with defective crankshafts. Retention of these revenues is inequitable because Defendant failed to disclose the known risks associated with their products, thereby misleading consumers and endangering their safety.

52. Plaintiff and the members of the Class seek restitution of the monies conferred upon Defendant as a result of their unjust enrichment. Defendant should be required to disgorge

the profits obtained from the sale of Motorcycles equipped with defective crankshafts and provide restitution to Plaintiffs and the Classes, as ordered by the Court.

## COUNT II

## FRAUDULENT CONCEALMENT

53. Plaintiff incorporates the allegations set forth in the previous aforementioned Paragraphs as though set forth fully herein.

54. Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

55. Defendant had a duty to disclose material facts to Plaintiff and Class Members given their relationship as contracting parties and intended users of the Products.

56. Defendant had superior knowledge about the defective nature of the product at issue, particularly the risk of engine stalling and failure, which made them unfit for ordinary use.

57. During this time, Plaintiff and Class Members were using the Products without knowing of this engine's stalling risks, reasonably believing that the Products were safe for use.

58. Defendant knew or should have known about the defect but failed to warn consumers, retailers, or regulators, and continued to sell the Product despite the defect, and either knew or should have known about the risk.

59. Defendant failed to disclose these material facts with the intent to induce consumers into purchasing the Products, despite the latent defect. This failure constitutes fraudulent concealment as Defendant intentionally withheld critical safety information that, if disclosed, would have affected consumer purchasing decisions.

60. Plaintiff and Class Members reasonably relied on Defendant's failure to disclose,

believing that the Products were safe when, in fact, they were not.

61. Had Plaintiff and Class Members known the true risks, they would not have purchased the Products or would have paid significantly less.

62. As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff and Class Members suffered financial losses, including the cost of purchasing defective Products, the risk of harm, and the devaluation of their purchases.

63. Because Defendant acted with willful and malicious intent, punitive damages are warranted to deter future misconduct and punish Defendants for knowingly concealing critical safety information from consumers.

## COUNT III

### STRICT LIABILITY – FAILURE TO WARN

64. Plaintiff incorporates the allegations set forth in the previous aforementioned Paragraphs as though set forth fully herein.

65. Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

66. Defendant had a duty to warn Plaintiff and Class Members about the Defect and the true risks associated with the Products.

67. As the manufacturer, Defendant was in a superior position to know about the defective Products and their dangerous propensity of having the engine stall because of a defective crankshaft exposing the rider to crash hazard that could cause serious and life-threatening injuries. However, Defendant failed to warn consumers, retailers, and regulatory agencies about the risks when it had the opportunity to do so.

68. Defendant failed to provide adequate warnings regarding the risks of the Products

before or at the time of sale, particularly if it continued selling the Products despite knowledge of the recall or other safety concerns.

69. Defendants had access to critical safety information regarding the crash hazards associated with the Products, yet failed to warn Plaintiff and Class Members, leaving them unaware of the dangers.

70. Despite knowing the risks, Defendant did not strengthen their warnings or provide adequate safety disclosures before selling the Products. Instead, Defendant actively concealed or ignored the need for stronger warnings, prioritizing sales over consumer safety.

71. Plaintiff and Class Members would not have purchased, chosen, or paid for the Products had they known of the crash risk arising out of a defectively designed crankshaft that would cause the engine to stall while in use and expose them to a crash hazard that could result in extreme physical injury. Because Defendant failed to provide proper warnings, consumers were deprived of their right to make an informed purchasing decision.

72. The Defect proximately caused Plaintiff's and Class Members' damages, as they purchased and used a Product that posed an unreasonable risk of harm without their knowledge.

73. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT IV

### STRICT LIABILITY – DESIGN DEFECT

74. Plaintiff incorporates the allegations set forth in the previous aforementioned Paragraphs as though set forth fully herein.

75. Plaintiff brings this claim against Defendant on behalf of himself and the other

Members of the Nationwide Class (the "Class").

76. The design of the recalled Kawasaki Motorcycles was defective and unreasonably dangerous, making the Products unsafe for consumer use.

77. The risk of crashing after an engine stalls, or in other words, shuts off while in use by Plaintiff and Class Members possess a serious risk of injury or property damage.

78. The design defect rendered the Products not reasonably fit, suitable, or safe for their intended purpose, violating consumer safety expectations.

79. The crash hazard outweighed the benefits of the Products, making them unreasonably dangerous to consumers.

80. There were alternatives, safer Motorcycle engine designs available, including other Motorcycles that did not have their engines fail or pose a similar crash risk, meaning Defendant had the ability to manufacture a safer product, but failed to do so.

81. Defendant could have implemented safer design modifications that would have reduced or eliminated the crash risk but failed to do so.

82. Because the Products were unreasonably unsafe and did not perform as an ordinary consumer would expect, they should not have been sold to consumers.

83. Defendant is strictly liable for selling the defective Product, as strict liability applies to all entities in the chain of distribution.

84. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT V

### NEGLIGENT FAILURE TO WARN

85. Plaintiff incorporates the allegations set forth in the previous aforementioned Paragraphs as though set forth fully herein.

86. Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

87. Defendant owed Plaintiff and Class Members a duty of care to warn of any risks associated with the Products.

88. Defendant knew or should have known that the defective product posed a significant risk of exposing riders to a life-threatening crash when the Motorcycle engine failed due to a defective crankshaft but failed to warn Plaintiff and Class Members.

89. Defendant had a duty to warn consumers if it had knowledge or reason to know about the defect including through prior consumer complaints, product recalls, or other safety notices, but failed to provide adequate warnings before or at the time of sale.

90. Plaintiff and Class Members had no way of knowing about the Product's latent defect, as an ordinary consumer would not expect the Product to catch fire under normal use.

91. Defendant's breach of its duty to warn caused Plaintiff and Class Members to suffer economic damages and physical injuries.

92. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees available under law.

## COUNT VI

## NEGLIGENT DESIGN DEFECT

93. Plaintiff incorporates the allegations set forth in the previous aforementioned Paragraphs as though set forth fully herein.

16

94. Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

95. Defendant owed Plaintiff and Class Members a duty of care to design, manufacture, and sell products that were safe for their intended use.

96. The design of the recalled Kawasaki's KX Series Motorcycles was defective and unreasonably dangerous, causing exposure to a crash hazard, and the risk of severe injury or property damage.

97. The design of the Products rendered them unfit, unsuitable, and unsafe for their intended purpose, as the risk of falling after your clothing got caught within the electric powered chain far outweighed any benefits of the Product.

98. There were alternative, safer Motorcycle designs available that did not have their engines stall while in use due to a defective crankshaft, meaning Defendant could have implemented a safer design but failed to do so.

99. Defendant had access to industry knowledge, safety reports, and consumer complaints that should have alerted them to the defective nature of the Products.

100. Defendant was negligent in selling the defective Products, as they either knew or should have known that the design was unreasonably dangerous, particularly if the recall had been issued or customer complaints had been received before further sales.

101. The negligent design of the Product was the proximate cause of Plaintiff's and Class Members' damages, as it posed an inherent and foreseeable risk of harm that Defendant failed to address.

102. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other

legal and equitable relief, and all costs and attorneys' fees available under law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against the Defendant as follows:

A. For an order certifying the Class and naming Plaintiff as the representative for the Class and Plaintiffs' attorneys as Class Counsel;

B. For an order declaring that Defendant's conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I. For an order providing for all other such equitable relief as may be just and proper.

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: May 1, 2025,                    Respectfully submitted,

/s/Eric M. Poulin
Eric M. Poulin (California State Bar No. 298476)
Paul J. Doolittle, Esq. (*Pro Hac Vice* Forthcoming)

|   |   |
|---|---|
| 1 | **POULIN | WILLEY | ANASTOPOULO, LLC** |
| 2 | 32 Ann Street |
|   | Charleston, SC 29403 |
| 3 | T: (803) 222 – 2222 |
|   | E: eric.poulin@poulinwilley.com |
| 4 |    paul.doolittle@poulinwilley.com |
|   |    cmad@poulinwilley.com |

*Attorneys for Plaintiffs and the Putative Class*